[No. 29243-9-I.   Division One.   April 11, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN LAMONT TAYLOR, *Appellant.*

*Lisa Dworkin* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Johnson, Deputy,* for respondent.

AGID, J. — Brian Lamont Taylor was convicted and sentenced for six counts of violating the Uniform Controlled Substances Act, RCW 69.50.401(a). Taylor contends that the trial court should have granted his motion to suppress the contraband because the search warrant was invalid. He further contends that the evidence was insufficient to support his convictions on counts 4 and 5, and that the trial court's application of the deadly weapon enhancement at sentencing denied him his constitutional right to keep and bear arms.[1] We affirm.

## I

### FACTS

In September 1990, Leonard Charles,[2] a Seattle Police Department informant, told Detective MacGregor Gordon that Taylor was dealing cocaine out of one of his two residences, located on 32nd Avenue South in Seattle (32nd Ave-

---

[1] The Appellant's pro se brief sets forth issues identical to those argued in defense counsel's brief.

[2] Charles was a confidential informant until just prior to trial, when he revealed his identity to defense counsel.

nue). Charles also informed Gordon that Taylor used another house, this one on Ithaca Place, to process the cocaine into other forms such as crack. Charles gave information to Detective Gordon that formed the basis upon which a magistrate issued a search warrant for Taylor's two residences. Charles informed Gordon that he had seen a large quantity of cocaine on the kitchen table at 32nd Avenue which was packaged in small amounts. Also, within 48 hours prior to the time the search warrant was issued, Charles saw a large quantity of packaged crack cocaine on a gray couch downstairs. The affidavit for the search warrant stated that Charles had also seen powdered and crack cocaine at the Ithaca Place residence on three occasions, including once within the last 48 hours. Finally, the affidavit stated that, under police surveillance, Charles had performed a controlled buy on two occasions at the 32nd Avenue residence.[3]

On November 20, 1990, the Seattle Police Department executed the search warrant at the Ithaca Place residence. When the police heard no response after knocking, they forced their way into the house. Taylor and his aunt were sitting on the living room couch. Inside, the police found baggies containing approximately 15 grams of powdered and rock cocaine, 1 gram of black tar heroin, a bottle containing 46 diazepam pills, baggies commonly used for packaging cocaine and heroin, a cocaine grinder, scales, a pager and $5,737 in cash. The officers also found an unloaded .45-caliber gun on the living room coffee table. The gun was in a leather bag, along with a clip containing seven rounds of ammunition. That same morning, other officers executed a search warrant on the 32nd Avenue residence. There, the police found approximately 32 grams of cocaine, scales, baggies, a sifter, razor blades, lactose (a cutting agent), a shoulder holster, a gun box, a loaded .45-caliber clip, 3 pagers and a cellular phone.

---

[3]The affidavit did not mention the controlled buys that took place at the 2500 block of 29th Avenue South. In those transactions, which were charged in counts 1 and 2, Taylor sold the cocaine out of his car.

## II
### Sufficiency of The Warrant

Taylor first challenges the sufficiency of the search warrant, arguing that the warrant affidavit both contained a material misrepresentation and omitted relevant facts necessary to make a determination of probable cause. He argues that the trial court should have suppressed the evidence seized during the search, or that he was entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), to determine whether his Fourth Amendment rights were violated.

A magistrate's determination that probable cause exists to issue a warrant is entitled to considerable deference by appellate courts. *State v. Mak*, 105 Wn.2d 692, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986); *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984). When a search warrant's validity is challenged, doubts will be resolved in favor of the warrant. *Mak*, 105 Wn.2d at 714. In *Jackson*, the Supreme Court set forth the appropriate analysis for challenges to the validity of a search warrant. The court affirmed its adherence to the 2-pronged *Aguilar-Spinelli*[4] test when reviewing claims made under Const. art. 1, § 7. Under that test, the warrant affidavit must demonstrate the informant's (1) "basis of knowledge" and (2) "veracity". *Jackson*, 102 Wn.2d at 437. The "basis of knowledge" prong is satisfied if the affidavit establishes the circumstances under which the informant obtained his information. The informant must state that he has personal knowledge of the facts asserted in the affidavit. The "veracity" prong is commonly satisfied by a showing that the informant has a proved "track record", *i.e.*, that he has provided accurate information to the police in the past. *Jackson*, 102 Wn.2d at 436-38. If the warrant affidavit fails to satisfy either of the *Aguilar-Spinelli* prongs, the deficiency may be cured by corroborating the informant's tip with independent police investigatory work. *Jackson*, at 438.

---

[4]*See Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

In a pretrial motion to suppress, Taylor argued that the warrant affidavit misrepresented the manner in which the controlled buys occurred. He further argued that, after the search warrant was executed, Charles gave a sworn statement that the controlled buys never occurred.[5] In addition, Taylor contended that the warrant omitted that Taylor was Charles' nephew, that Charles was a drug addict with pending criminal charges against him at the time he informed on Taylor, and that Charles had admitted possessing drugs in a prior case in which Taylor had been initially charged. Taylor argued that the magistrate could not independently evaluate Charles' reliability without knowing about these circumstances.

Although he does not apply the *Franks* analysis in his brief, Taylor continues to argue that material misrepresentations and omissions prevented the magistrate from accurately assessing Charles' reliability. These assertions require a *Franks* analysis. Under *Franks*, the court must first determine whether the misrepresentations and/or omissions were deliberate or reckless. If the answer to that question is yes, the next question is whether the facts allegedly misstated or omitted were material or relevant to the magistrate's determination of probable cause. *State v. Garrison*, 118 Wn.2d 870, 872-73, 827 P.2d 1388 (1992). In determining materiality, "[t]he challenged information must be *necessary* to the finding of probable cause." *Garrison*, 118 Wn.2d at 874. It is not enough to say that the information tends to negate probable cause. *Garrison*, at 874. Finally, if the facts were relevant, the court must delete the false or misleading information or insert the omitted information. "If the affidavit with the matter deleted or inserted, as appropriate, remains sufficient to support a finding of probable cause, the suppression motion fails and no hearing is required." *Garrison*, 118 Wn.2d at 873. On the other hand, if the altered affidavit fails to demonstrate probable cause, then the defendant is entitled to an evidentiary hearing. *Garrison*, at 873.

---

[5]In the later statement, Charles said that the drugs Taylor delivered were in fact Charles'.

■ In this case, defense counsel offered to prove that, by the prosecutor's admission, one of the controlled buys alleged in the affidavit did not occur at 32nd Avenue. Rather, it was a "moving buy", in which Taylor "drove to the premises, entered the premises, came out, went back and allegedly delivered drugs". This misrepresentation apparently resulted from an innocent mistake on Detective Gordon's part. There was no showing that Gordon deliberately or in reckless disregard of the truth misrepresented the manner in which one of the buys took place. Accordingly, it is unnecessary to determine whether this misrepresentation was material. In any event, as the discussion below demonstrates, this error was not material.

■ Taylor's primary contention relates to Gordon's omission of facts which he contends are directly relevant to a determination of Charles' reliability. First, he states that Gordon should have told the magistrate that Charles was a drug addict and that he had criminal charges pending against him at the time he informed on Taylor. A similar argument was made and rejected in *State v. Lane*, 56 Wn. App. 286, 294-95, 786 P.2d 277 (1989). There, the defendant claimed that the detective's failure to inform the magistrate that the informant had a prior criminal record made the warrant deficient. The court disagreed, stating that it was common for a person who is in the position of arranging a controlled buy to have had prior contact with the criminal justice system. The court therefore concluded that omitting the informant's criminal record did not mislead the magistrate. The trial court in this case also believed that informants who arrange controlled buys and are witnesses to dealers' possession of large amounts of drugs are often involved in drugs themselves, and that magistrates are well aware of this fact. We agree, and hold that, even if Detective Gordon deliberately or recklessly omitted Charles' history, his criminal status was not material to a finding of probable cause.

■ Even if it were material, Charles' addiction and pending criminal charges, when added to the warrant affidavit,

do not vitiate the warrant. *Garrison*, 118 Wn.2d at 873-74. Charles had a $2^1/_2$-year track record of providing accurate information which led to numerous arrests and drug-related convictions. He had been a reliable informant in spite of his drug addiction and criminal status. No evidence was presented that these circumstances affected Charles' veracity or reliability differently in this case than they had in other cases for which Charles had provided information.

Taylor also contends that Gordon should have informed the magistrate that Charles was Taylor's uncle, that he had admitted his own guilt in a drug possession charge with which Taylor had initially been charged, and that he had access to both of Taylor's alleged residences. Charles' and Taylor's relationship was not included in the affidavit because the police did not want to reveal the identity of a confidential informant. As the State points out in its brief, there are persuasive public policy reasons for keeping informants' identities confidential. Police are more likely to get information from people who have been promised anonymity. In addition, few people would cooperate with the police in an ongoing investigation of potential illegal activity if they knew their identities might be revealed. In the case of informants who are related, the need is even more compelling as family members are sometimes the only ones with enough information upon which to base a finding of probable cause to arrest. For these reasons, it is a common practice for police to rely on anonymous informant information when seeking a search warrant. Magistrates know that the police purposely omit the names of the informants. Therefore, the informant's identity generally is immaterial to the magistrate's determination of probable cause.

Taylor contends that Charles' identity was material in this case because Charles' "history, relationship, and malice toward [Taylor] casts dispositive doubt on his reliability". Charles testified at trial that he "planted" the contraband delivered in the controlled buys and found in Taylor's residences because he was angry at Taylor for failing to pay off a debt. Therefore, Taylor argues, it is clear that Charles

was not a credible informant.[6] However, Taylor's and Charles' alleged feud did not come out until Charles testified at trial. Therefore, this information could not have affected the trial court's determination of whether Charles was a reliable informant. Taylor's argument that disclosure of his relationship with Charles was material is not persuasive.

Taylor also claims that Gordon knew at the time the warrant was issued that Charles was motivated to inform on Taylor because Charles was angry with him. Gordon confirmed this fact at trial. However, the defense did not allege in its pretrial motion that Charles lied to the police because he was angry with Taylor. Nor did it offer to prove that Gordon knew about Charles' motive and intentionally omitted the information from the warrant affidavit. Consequently, Taylor failed to establish that Gordon intentionally or recklessly omitted Charles' motive from the affidavit. Under *Franks*, our inquiry ends here. *Garrison*, 118 Wn.2d at 872-73 (allegations of deliberate omission must be accompanied by an offer of proof; if this requirement is not met, the inquiry ends).

Even if the defense had argued pretrial that Taylor's motive was a material omission, we would reject that argument on appeal. In *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988), *cert. denied*, 489 U.S. 1032 (1989), the defendant argued, *inter alia*, that the police should have informed the magistrate that the informants, who were husband and wife, were motivated by their desire to obtain immunity from prosecution, that the wife was paid for her information and that the husband was a convicted felon, drug user, and was under investigation for purchasing methamphetamine manufacturing equipment. The Circuit Court held that the omission of these circumstances was immaterial to the informants' credibility:

> It would have to be a very naive magistrate who would suppose that a confidential informant would drop in off the street

---

[6]At trial, Charles testified that Taylor owed him money in exchange for Charles' admission that the cocaine Taylor was charged with possessing belonged to Charles. Charles said that he planted the drugs in Taylor's homes because he was angry with him for not paying this debt.

> with such detailed evidence and not have an ulterior motive.
> The magistrate would naturally have assumed that the infor-
> mant was not a disinterested citizen. While the magistrate
> was not informed of the informant's probity, the magistrate
> was given reason to think the informant knew a good deal
> about what was going on at 22700 West Deal Road.

*Strifler*, 851 F.2d at 1201. *See also United States v. Flagg*, 919 F.2d 499, 500-01 (8th Cir. 1990) (the omission of facts about the informant's criminal record and possible motive would not generally mislead magistrates since informants often have criminal records and supply information to the government pursuant to plea agreements); *State v. Garberd-ing*, 245 Mont. 356, 362, 801 P.2d 583, 586 (1990) (that the primary informant was a convicted felon and received pay-ment for his tip did not cast doubt on his reliability; there-fore, the omission of these circumstances did not warrant a *Franks* hearing, because "[a] person of known criminal activity . . . is not likely to place himself in such a dubious position unless he is telling the truth").

The reasoning applied by the courts in *Strifler, Flagg* and *Garberding* is persuasive. Here, as in those cases, omission of the informant's criminal record and ulterior motive for supplying information was not material because informants frequently have criminal records as well as ulterior or self-serving motives for divulging the information. Thus, Charles' familial relationship to the Defendant and the evi-dence of Charles' motive is not necessary to support a find-ing of probable cause. *Garrison*, 118 Wn.2d at 874.

Even if these facts were material, the supplemented affi-davit would still support a finding of probable cause. Charles' information as to where the drugs were located in the two houses was very detailed. The affidavit demonstrated that Charles had gained this information firsthand. Perhaps most important, Charles had proved himself as a reliable infor-mant. That Charles had supplied information in numerous cases over the past $2^{1}/_{2}$ years which had led to the arrests of more than 40 individuals was sufficient in itself to estab-lish his reliability. *State v. Salinas*, 119 Wn.2d 192, 200-01, 829 P.2d 1068 (1992) ("[w]hile the mere statement that an

informant is credible is not sufficient, it is almost universally held to be sufficient if, in the past, information has been given which has led to arrests and convictions").

Finally, the controlled buys described in the affidavit confirm Charles' reliability. The defense argued in its pretrial motion that the buys should be excised from the warrant affidavit because one of the buys allegedly occurred as a moving buy rather than out of the 32nd Avenue residence. However, it is immaterial that one of the buys took place in a location different from the one alleged in the affidavit. What is important is that, after the informant purchased drugs from the Defendant, he returned to the police with a substance which was later determined to be cocaine. Because the warrant affidavit does not expressly state that Charles was searched before he purchased the cocaine,[7] the controlled buys would probably not be sufficient on their own to support probable cause. However, the informant provided detailed information as to the presence of contraband in the Defendant's two residences and his track record was set forth in the affidavit. Accordingly, even if the facts concerning Charles' ulterior motive and criminal record were included in the affidavit, it would still support a finding of probable cause.

## III

### SUFFICIENCY OF THE EVIDENCE ON COUNTS 4 AND 5

Taylor next argues that the evidence was insufficient to support the inference of intent to deliver the heroin and diazepam. The test for determining the sufficiency of the evidence is " 'whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Brown*, 68 Wn. App. 480, 483, 843 P.2d 1098 (1993) (quoting *State v. Grover*, 55 Wn. App. 923, 930, 780 P.2d 901 (1989), *review denied*, 114 Wn.2d 1008 (1990)). A jury may rely solely on circumstantial evi-

---

[7]The warrant affidavit generally describes the proper procedure for performing a controlled buy. It does not confirm that the procedure was followed in this case.

dence in rendering its verdict. *State v. Kovac*, 50 Wn. App. 117, 119, 747 P.2d 484 (1987). Specific criminal intent may be inferred from circumstances as a matter of logical probability. *Brown*, 68 Wn. App. at 483.

"Convictions for possession with intent to deliver are highly fact specific and require substantial corroborating evidence in addition to the mere fact of possession." *Brown*, 68 Wn. App. at 485. In cases where the evidence was found sufficient to support an inference of intent to deliver, at least one factor in addition to possession of narcotics was present. In *State v. Harris*, 14 Wn. App. 414, 542 P.2d 122 (1975), *review denied*, 86 Wn.2d 1010 (1976), the court found that possession of five 1-pound bags of marijuana, scales, and the fact that marijuana is usually sold to dealers by the pound evidenced an intent to deliver. In *State v. Simpson*, 22 Wn. App. 572, 575-76, 590 P.2d 1276 (1979), the court determined that the jury could have reasonably inferred intent to deliver from the defendant's possession of 7.8 grams of uncut powder, part of which was heroin, balloons commonly used for packaging, and an unusual quantity of lactose used for cutting heroin. Finally, in *State v. Lane*, 56 Wn. App. 286, 786 P.2d 277 (1989), 1 ounce of cocaine, a scale, and large amounts of cash evidenced an intent to deliver. The court primarily relied on the large quantity of cocaine, worth about $1,000, and testimony that a standard size purchase of cocaine is one-eighth ounce. *Lane*, 56 Wn. App. at 297-98.

The cases cited above establish that the presence of contraband, together with packaging and processing materials, such as baggies, scales, and cutting agents, sufficiently support a finding of intent to deliver. Here, in addition to 15 grams of cocaine, 1 gram of heroin and 1 bottle of diazepam pills, the police found baggies, scales and a large amount of cash at the Ithaca Place residence. Taylor apparently believes that the State must present evidence that the Defendant was dealing each drug in his possession separately in order to establish that he possessed them with the intent of selling them. The law does not require such a showing. The evidence of drug dealing generally was sufficient to allow the jury to conclude

that Taylor intended to deliver not only the cocaine, but the heroin and diazepam as well.

## IV

### DEADLY WEAPON ENHANCEMENT

Finally, Taylor claims that the trial court's application of the deadly weapon enhancement[8] denied him his constitutional right to keep and bear arms. Const. art. 1, § 24 protects the individual's right to keep and bear arms. *State v. Rupe*, 101 Wn.2d 664, 706-07, 683 P.2d 571 (1984). However, the right is subject to regulation by the State under its police power. *Rupe*, 101 Wn.2d at 707 n.9. Taylor relies on *Rupe* for the proposition that an individual is entitled to possess weapons in his or her home without incurring the risk that the State would use the fact of possession against him or her in a trial for a crime that was unrelated to their use. *See Rupe*, 101 Wn.2d at 706-07 (holding that the sentencing court's admission of evidence of Rupe's gun collection, none of which was used in connection with the charged crime, was error because it allowed the State to draw adverse inferences from the defendant's mere possession of guns, which is constitutionally protected behavior).

In *State v. Sabala*, 44 Wn. App. 444, 723 P.2d 5 (1986), the court rejected the defendant's contention that his right to bear arms was violated by application of the deadly weapon enhancement. Sabala was arrested while attempting to deliver heroin. After purchasing the heroin from an undercover officer, Sabala was stopped in his car, searched and arrested. In addition to the heroin, the police found a loaded gun under the driver's seat. No evidence was presented that Sabala ever reached for or handled the gun when he purchased the narcotics or during the stop. *Sabala*, 44 Wn. App. at 445. Sabala argued that he was not "armed with" the gun for purposes of applying the deadly weapon enhancement. The court ruled that a defendant is "armed" if he has a weapon that is readily available and accessible for his use for either offensive or defensive purposes. Because Sabala

---

[8]*See* RCW 9.94A.125.

was driving the car and the fully loaded gun was beneath the driver's seat, the court held the evidence sufficient to support a finding that he was "armed". *Sabala*, 44 Wn. App. at 448. Regarding the alleged constitutional violation, the court noted that the right to bear arms is subject to reasonable regulation and does not apply to one who is in the process of committing a crime. Since Sabala was armed with the gun while in possession of, and in the process of delivering, narcotics, the court found a sufficient nexus between the gun found under the seat and the crime. *Sabala*, 44 Wn. App. at 449.

We reject Taylor's contention that, like Rupe, he was not engaged in criminal activity when the police executed the warrant and found the gun. Like Sabala, Taylor was in possession of narcotics and other materials indicating an intent to deliver when he was searched and arrested. Further, the gun was sitting on a table next to the couch where Taylor was sitting and was easily accessible to him. The only difference between the gun in this case and the gun in *Sabala* is that here, the gun was in a leather bag and was not loaded. However, also in the bag was a loaded clip, making the ammunition easily accessible. Moreover, because the term "deadly weapon" includes unloaded firearms, RCW 9A.04.110(6), whether the gun is loaded or unloaded is irrelevant in determining whether the gun is easily accessible and readily available for use. *State v. Speece*, 56 Wn. App. 412, 416, 783 P.2d 1108 (1989), *aff'd*, 115 Wn.2d 360, 798 P.2d 294 (1990). Because Taylor was "armed" at the time he possessed the contraband, the gun and the crime were sufficiently connected, and no constitutional violation occurred.

Taylor attempts to distinguish *Sabala* on the basis that a person has a greater expectation of privacy in a home than in an automobile, where Sabala was arrested. He relies on *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), in which the Supreme Court held that a person has a lesser expectation of privacy in an automobile. This reliance is misplaced. *Stroud* addressed the propriety of a warrantless

search of an automobile. When the police search an automobile or a home under the authority of a search warrant, privacy analysis is inappropriate. Further, the jury's finding in *Sabala* that the defendant was armed with a deadly weapon during the commission of the crime had nothing to do with the level of privacy he could expect in his automobile. This might be a different case if the gun had been found in a drawer or other location in Taylor's house. Because the weapon was sitting on the table next to Taylor, however, the jury was entitled to conclude that it was readily available and accessible to his use.

The judgment is affirmed.

WEBSTER, C.J., and SCHOLFIELD, J., concur.

Review denied at 124 Wn. 2d 1029 (1994).