[No. 17471-9-III.   Division Three.   December 28, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK LOGAN SCHELIN, *Appellant*.

*Douglas D. Phelps* (of *Phelps & Associates*) and *Donovan E. Walker*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies*, for respondent.

SWEENEY, J. — The State must prove that a deadly weapon is both readily available and easily accessible to establish that a defendant was armed with a deadly weapon at the time of the commission of a crime. The defendant must then have physical access to the weapon at the time the crime is being committed. Here, Mark Schelin kept a loaded revolver 10 feet[1] from the bottom of a stairway. Police found Mr. Schelin at the bottom of that stairway as they entered his home to execute a search warrant. The question is whether that evidence is sufficient to support a jury finding that the deadly weapon was readily available and easily accessible for purposes of the deadly weapon enhancement. RCW 9.94A.125. We conclude that it is and affirm the court's judgment and sentence. We reject the remainder of Mr. Schelin's assignments of error.

[1] The testimony varied on the distance from 6 feet to 15 feet.

## FACTS

A citizen informant tipped off Detective Jeff Paynter that someone was growing marijuana in Spokane, Washington. Detective Paynter checked the address's power usage; it was higher than normal. Power records also showed that the current subscriber was Mutsako Lundquist, and the former subscriber was Mark Schelin. Detective Paynter went to the address and pretended to be looking for a lost dog. He spoke with Mr. Schelin and smelled fresh marijuana on him.

Detective Paynter obtained a search warrant for the address. Police executed the warrant on August 21, 1996. They entered the home and saw Mr. Schelin at the bottom of the basement stairs. A loaded revolver hung on a wall approximately 10 feet from the bottom of the stairs. They ordered Mr. Schelin to come up. He did. And they handcuffed him. Police found live marijuana plants, dried marijuana, and equipment used for the distribution of marijuana.

The State charged Mr. Schelin with possession of a controlled substance with intent to manufacture. He waived his right to a speedy trial. The State amended the information to add possession of a controlled substance with intent to deliver and included an allegation that Mr. Schelin was armed with a deadly weapon.

Mr. Schelin moved to suppress all evidence gathered from the search of his home. The court denied his motion.

During trial, Mr. Schelin admitted that he regularly smoked marijuana. He also admitted that he could quickly reach the revolver hanging on the wall from the bottom of the basement stairs. A jury found Mr. Schelin guilty of both drug charges. It also found that he was armed with a deadly weapon.

## ANALYSIS

Deadly Weapon Enhancement.

Mr. Schelin argues that he was at most in constructive

possession of the revolver and was not armed with a deadly weapon as contemplated by RCW 9.94A.125.[2] The State responds that a deadly weapon need only be easily accessible or readily available to the defendant for the defendant to be deemed armed. And Mr. Schelin's proximity to the revolver coupled with his admission that he could have quickly reached the weapon supports the jury's finding here that he was armed with a deadly weapon.

■ The determination of whether a person is armed with a deadly weapon is a mixed question of law and fact. Here, the question is whether the State has presented sufficient evidence that the weapon was "easily accessible or readily available"—sufficient evidence to submit the question to the jury. Review is therefore de novo. *State v. Johnson*, 94 Wn. App. 882, 892, 974 P.2d 855 (1999), *review denied*, 139 Wn.2d 1028 (2000); *State v. Mills*, 80 Wn. App. 231, 234-35, 907 P.2d 316 (1995).

RCW 9.94A.125 authorizes a sentencing enhancement if the defendant was armed with a deadly weapon during the commission of the crime. *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993). A person is armed if a deadly weapon is easily accessible and readily available for use, either for offensive or defensive purposes. *Id.*; *State v. Taylor*, 74 Wn. App. 111, 124, 872 P.2d 53 (1994).

■ The question is whether the evidence is sufficient to support the jury's finding that the defendant was armed. *State v. Tongate*, 93 Wn.2d 751, 754, 613 P.2d 121 (1980).[3]

---

[2] "**Deadly weapon special verdict—Definition.** . . . [T]he court shall make a finding of fact of whether or not the accused . . . was armed with a deadly weapon at the time of the commission of the crime, or if a jury trial is had, the jury shall . . . .

" . . . [A] deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.125.

[3] *See Valdobinos*, 122 Wn.2d at 282 (evidence of a rifle in a bedroom "without more" is insufficient to show that the defendant was armed with a deadly weapon); *State v. Call*, 75 Wn. App. 866, 869, 880 P.2d 571 (1994) (court's findings of constructive possession, without addressing whether weapons were accessible or

The defendant's weapon must be easily accessible and readily available for use.[4]

The mere presence of a weapon is not enough. The defendant, the deadly weapon, and the crime must all connect. *Johnson*, 94 Wn. App. at 892; *Mills*, 80 Wn. App. at 236.

In *State v. Mills*, police arrested David Mills outside his home for possession of a controlled substance. Mr. Mills tried to hide a motel key in the seat cushions while in the back of the patrol car. *Mills*, 80 Wn. App. at 233. Police recovered the key and obtained a warrant to search the room. *Id*. They searched the motel room and found a large quantity of methamphetamine and a pistol in a gun case lying beside the narcotics. *Id*. The court, sitting without a jury, convicted Mr. Mills of possession of a controlled substance with intent to deliver while armed with a deadly weapon. *Id*.

The Court of Appeals reversed the deadly weapon enhancement. *Id*. at 237. It concluded there was no nexus between the gun and the defendant. Mr. Mills was in custody miles away from the motel room when the gun was found. The weapon was not then readily available and easily accessible to Mr. Mills. *Id*.

For us, *State v. Simonson*[5] takes a step away from the nexus required by *Mills*. Rodney Simonson was in jail on unrelated charges when a trailer he owned exploded. The trailer had been used as a meth lab. *State v. Simonson*, 91 Wn. App. 874, 877, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016 (1999). Police obtained a warrant for another of

---

available, is insufficient to support deadly weapon enhancement).

[4] *See State v. Williams*, 85 Wn. App. 508, 514, 933 P.2d 1072 (1997) (evidence that pistol was on top of refrigerator in same room was sufficient to show it was easily accessible and ready for use), *rev'd on other grounds*, 135 Wn.2d 365, 957 P.2d 216 (1998); *Taylor*, 74 Wn. App. at 125 (gun on table next to couch where defendant was sitting was sufficient to show it was easily accessible and ready for use); *State v. Sabala*, 44 Wn. App. 444, 448, 723 P.2d 5 (1986) (gun under driver's seat of car was easily accessible and ready for use by the driver of the car).

[5] 91 Wn. App. 874, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016 (1999).

Simonson's trailers and there found six guns and items used in the manufacturing of methamphetamine. *Id.* at 877-78. A jury found Mr. Simonson guilty of unlawful manufacture of a controlled substance and six counts of unlawful possession of a firearm. *Id.* at 880. It found he was armed with a deadly weapon at the time of the unlawful manufacture. *Id.*

On appeal, the court affirmed the deadly weapon enhancement concluding that Mr. Simonson committed a continuous offense over a six-week period of time. *Id.* at 883. The jury could then infer that the purpose of having so many guns was to defend the manufacturing site from possible attack. *Id.*

*Simonson* is contradicted by *Johnson*. In *Johnson*, police executed a search warrant at Mathew Johnson's residence. Mr. Johnson ran from the living room toward the bathroom when officers entered. *Johnson*, 94 Wn. App. at 887. Police pulled him from a hallway into a living room, took him down, and cuffed him. *Id.* They moved Mr. Johnson to a table between the living room and dining room. *Id.* at 887-88. Police asked if there were weapons in the house. Mr. Johnson replied that there was one in the coffee table in front of the couch. *Id.* at 888. The gun was in the coffee table. *Id.* Mr. Johnson sat five to six feet from the gun, but was handcuffed. *Id.* The trial court submitted the deadly weapon question to the jury. It found that Mr. Johnson was armed with a deadly weapon. *Id.*

On appeal, the court noted there was no realistic possibility for Mr. Johnson to access the gun. *Id.* at 894-95. He was handcuffed. The gun was out of his reach. It was not therefore "easily accessible." The required nexus between the crime and the weapon was absent. And the question should not have been submitted to the jury. *Id.* at 896-97.

The *Johnson* court criticized the *Simonson* decision for failing to apply the "proximity rationale." The failure to do so allowed the jury to find that Mr. Simonson was armed even though a weapon was merely present on the premises during a crime committed over a period of time. *Id.* at 895.

Washington requires some convenient physical nexus between the defendant and the deadly weapon. *Id.* at 895-97; *Mills*, 80 Wn. App. at 236-37.

We agree with the *Johnson* court's criticism of *Simonson*. There must be both a physical and temporal nexus between the defendant and the weapon. But we think *Johnson* focuses on the wrong point in time—when the crime is discovered.

Officer safety is the policy behind the deadly weapon enhancement, at least when other potential victims or bystanders are absent. *Johnson*, 94 Wn. App. at 895-96. Police face danger when they pull a suspect's car over, when they first enter a suspect's home, or otherwise first contact a suspect. *See State v. Sabala*, 44 Wn. App. 444, 448, 723 P.2d 5 (1986); *Taylor*, 74 Wn. App. at 125. So officer safety is best served if the court's focus is on the nexus between the defendant and the weapon at the time police enter a residence, or first contact the suspect, rather than when they discover the gun or the crime. *Johnson*, 94 Wn. App. at 894-95. This is because the officer is most at risk when police first make contact with the defendant or first enter the defendant's home. So for us it makes more sense for the court to look at the nexus between the defendant and the weapon at that time, not after the defendant has been cuffed or taken into custody. *Id.* at 896-97. The risk to officers is little to none then.

Of course the deadly weapon enhancement is just that, an enhancement to a sentence stemming from an underlying crime. The weapon, therefore, must also be tied to the crime. *See* RCW 9.94A.125 ("armed with a deadly weapon *at the time of the commission of the crime. . . .* ") (emphasis added). But when the crime is discovered is less critical to officer safety than the proximity between the defendant and weapon *when police first make contact*. There must then be a nexus between the defendant, the weapon, and the underlying crime.[6]

---

[6] *See State v. Williams*, 85 Wn. App. 508, 513-14, 933 P.2d 1072 (1997)

■ Finally, evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it would permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

We turn now to the facts before us. Mr. Schelin's revolver hung on a wall six to seven feet from the bottom of the stairs. Detective Hill believed "[t]he firearm was readily available to Mr. Schelin." Detective Paynter testified the gun was approximately 10 to 15 feet from the bottom of the basement stairs. And he believed the revolver could have been reached from the bottom of the stairs in a "very short time."

Private investigator Fred Young stated the revolver was accessible from the holster, but removing the weapon would take a certain level of strength. He measured the distance from the bottom of the stairs to where the holster was hanging; it was 15 feet. Mr. Young concluded it would take approximately four seconds to walk that 15 feet. The revolver was located in a room that also contained substantial amounts of marijuana and materials used in the distribution of marijuana.

Mr. Schelin was, at most, only a few seconds from his loaded revolver when police entered his home. It was at this point that the officers were most at risk. The jury's finding that Mr. Schelin was armed with a deadly weapon fully supports the policy consideration of officer safety. There is also the necessary nexus between the revolver and the crime. The revolver was in close proximity to Mr. Schelin's grow operation.

The evidence therefore supports the jury's finding that Mr. Schelin was armed at the time of this crime.

The judgment and sentence of the trial court is affirmed.

(defendant handled pistol while selling drugs to confidential informants), *rev'd on other grounds*, 135 Wn.2d 365, 957 P.2d 216 (1998); *Taylor*, 74 Wn. App. at 115, 125 (confidential informant had seen narcotics in defendant's home on three occasions, weapon was on table next to where defendant was seated when police entered the home); *Sabala*, 44 Wn. App. at 445, 448 (defendant had drugs on his person, pistol was under driver's seat of car he was driving).

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KURTZ, C.J., and SCHULTHEIS, J., concur.

Review granted at 143 Wn.2d 1019 (2001).