IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32291-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARREN L. LEMMON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — After the trial court denied Warren Lemmon's motion to

suppress evidence obtained in a search of his home, he was found guilty of possession of

a controlled substance and possession with intent to deliver. He appeals the trial court's

denial of his motion to suppress. He argues that the affidavit in support of the search

warrant relied on information provided by a confidential informant without providing

evidence of the informant's basis of knowledge and veracity required by the

*Aguilar/Spinelli*[1] test for probable cause. He argues that in denying the motion, the trial

court mistakenly relied on the federal "totality of the circumstances" standard.

---

[1] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Both *Aguilar* and *Spinelli* were abrogated by *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), but adhered to by *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

Mr. Lemmon's focus on the trial court's reference to the "totality of the information" is misplaced. Read as a whole, the trial court's findings and conclusions following the CrR 3.6 hearing make clear that it reviewed the warrant affidavit by applying the two-pronged test of *Aguilar/Spinelli*. For that reason, and because the warrant affidavit was sufficient to establish probable cause, we affirm.

FACTS AND PROCEDURAL BACKGROUND

In August 2011, Detective Steve Valley of the Mason County Sheriff's Office sought and obtained a search warrant for Warren Lemmon's motor home and any outbuildings and vehicles on Mr. Lemmon's property. Among information set forth in the detective's affidavit in support of the warrant was the following:

> that a confidential informant had told officers that Mr. Lemmon "sells Methamphetamine and Heroin and keeps it in his motorhome," and that the informant "could buy both controlled substances from him";
>
> that information about Mr. Lemmon's drug sales and possession had been "corroborated by multiple reliable sources over the past year";
>
> that officers had conducted a controlled buy at Mr. Lemmon's residence during the week of August 8, 2011;
>
> that the controlled buy was initiated by searching the informant for contraband and money; providing him or her with "inventoried monies"; driving the informant to the intersection of Centerline and Rivendell Road, where they let him or her out to walk to Mr. Lemmon's motor home, located at the end of Centerline Road;
>
> that they watched the informant walk to and return from the home to the extent they could, although the affidavit conceded that detectives "couldn't keep a constant visual on [the informant] all the way down to Lemmon's residence, due to the rural setting and location of his residence";

2

that the controlled buy was completed by picking up the informant on his or her return to the drop off point; taking him or her to a predetermined location without allowing contact with others; recovering from the informant the predetermined amount of methamphetamine that he or she had purchased; and again searching the informant to confirm that he or she had no other contraband or monies;

that in an interview with police after the controlled buy, the informant related that there were two females inside Mr. Lemmon's motor home smoking heroin while he or she was inside buying the drugs; that Mr. Lemmon's motor home was surrounded by a wooden fence and there was a metal gate at the front of the property; that he or she had observed a travel trailer, several cars, and a small shed on the property; and that there was a "very mean pit bull" in a dog house next to the motor home;

that on the same day as the controlled buy, a detective and an animal control officer drove to Mr. Lemmon's property and verified the informant's description of it;

that the informant had provided detectives with information in the past that had led to several arrests and felony charges;

that the informant's ongoing cooperation was motivated by his or her hope to receive a favorable recommendation in connection with pending charges in Mason County in exchange for reliable information leading to successful prosecutions, and

that the informant had made a number of statements against his or her penal interest.

Clerk's Papers (CP) at 57-59.

A search warrant was issued and the sheriff's office executed it on August 15. Among incriminating items found and seized in the search were $3,874 in cash, 129.7 grams of methamphetamine, 130.4 grams of heroin, 34 methadone pills, 47.4 grams of marijuana, several unused baggies, and a scale with a tar substance on the surface.

3

Mr. Lemmon was charged with one count of possession with intent to deliver a controlled substance under RCW 69.50.401(1) and one count of possession of a controlled substance under RCW 69.50.4013(1).

Mr. Lemmon moved to suppress the evidence obtained in the search of his property. He argued there was insufficient evidence to establish the reliability of the informant and the controlled buy was improperly executed because the officers were unable to maintain constant surveillance of the informant. The trial court denied the suppression motion. It later entered written findings and conclusions in which it found that there were no disputed facts and concluded that the informant's reliability was supported by evidence of a controlled buy, the informant's motive to provide reliable information in order to receive favorable treatment, and the informant's track record.

Two months later, Mr. Lemmon moved the court to conduct a *Franks*[2] hearing, "to determine whether statement(s) made in the application for search warrant by Det. Steve Valley were material omissions or false statements made intentionally or with reckless disregard for the truth." CP at 28. Specifically, he argued that the affidavit "indicated that the setting of the Defendant's residence was 'rural', meaning that there were no other residences located in the area, thus leading to the conclusion that the drugs came from the

---

[2] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

4

Defendant's residence." CP at 28-29. The motion was supported by a declaration from Mr. Lemmon, in which he stated that he had measured distances from the intersection of Rivendell and Centerline to his and other residences on Centerline. He testified that there were two residences roughly 250 feet from that intersection, one on either side, and three other residences further down Centerline (416 feet, 581 feet, and 764 feet, respectively). He stated that his own residence, which was at the end of Centerline, was set back 133 feet from the road.

Mr. Lemmon argued that the presence of other residences was inconsistent with Detective Valley's statement in the warrant affidavit that "SOG [Special Operations Group, the narcotics investigation division for Mason County] detectives couldn't keep a constant visual on the PO [police informant] all the way down to Lemmon's residence, due to the *rural setting* and location of his residence." CP 58 (emphasis added).

The court granted Mr. Lemmon's request for a *Franks* hearing. At the time of the hearing, Detective Valley testified that Mr. Lemmon's property was at the very end of Centerline, a dead-end road, and that in describing it as "rural," he meant:

> First of all, it was completely wooded. It's off of a private—or, I mean, county road. The county road quit. It was wooded. There was one other house down there on the assessor's page. The assessor's office got it listed as Rural 10, which means it's ten acres or more.

Report of Proceedings (RP) at 81. The State also offered a recent map of the area, obtained from the Internet, along with photographs taken by Detective Valley, that

"show[ed] basically the route to Mr. Lemmon's house from where [the detective] dropped the informant off." RP at 86. When cross-examined, the detective admitted that there were driveways and roads in the vicinity, but for the most part he did not know whether they led to other residences. Following the State's evidence, the defense called Mr. Lemmon, who used the State's photographs to describe where neighboring residences were located.

At the conclusion of the hearing, the trial court observed that there was testimony that the area is completely wooded and was zoned Rural 10. Referring to the photographs, the court stated, "[T]here's no contest that this is not an urban setting. There is not multiple houses there." RP at 109. While noting Mr. Lemmon's testimony that there were other residences in the area, the court stated it could not find any misstatement or omission by Detective Valley in light of the detective's testimony that he was unaware of other residences, which the court observed were "not visible from the pictures going down the road." *Id.* The court concluded, as it had earlier, that the warrant affidavit was sufficient to establish probable cause.

Following a stipulated facts trial, Mr. Lemmon was convicted as charged. He appeals.

ANALYSIS

Mr. Lemmon assigns error to the admission of evidence obtained from the search of his home on the basis that the search warrant was not supported by probable cause. He

6

focuses on the trial court's third conclusion of law following the CrR 3.6 hearing, which states, "In determining the reliability of the confidential informant, the Court looks at the totality of the information set forth in the affidavit." CP at 24. He argues from the reference to the "totality of the information" that the court applied the wrong standard in determining the existence of probable cause. He also argues that under the proper standard for evaluating probable cause—the *Aguilar/Spinelli* test—the evidence was insufficient. We address the assignments of error in turn.

## *I. The trial court applied the proper standard*

We first address Mr. Lemmon's contention that in reviewing whether the warrant affidavit demonstrated probable cause supporting issuance of the search warrant, the trial court applied the wrong legal standard.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution require that the issuance of a search warrant be based upon a determination of probable cause. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002); CrR 2.3(c). "Probable cause is established when an affidavit supporting a search warrant provides sufficient facts for a reasonable person to conclude there is a probability the defendant is involved in the criminal activity." *Vickers*, 148 Wn.2d at 108; *State v. Clay*, 7 Wn. App. 631, 637, 501 P.2d 603 (1972).

> For an informant's tip (as detailed in an affidavit) to create probable cause
> for a search warrant to issue: (1) the officer's affidavit must set forth some
> of the underlying circumstances from which the informant drew his

7

conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; and (2) the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable.

*State v. Jackson*, 102 Wn.2d 432, 435, 688 P.2d 136 (1984) (citing *Aguilar*, 378 U.S. at 114, 84 S. Ct. at 1514 and *Spinelli*, 393 U.S. at 413, 89 S. Ct. at 587)). Stated another way, the warrant affidavit "must demonstrate the informant's (1) 'basis of knowledge' and (2) 'veracity.'" *State v. Taylor*, 74 Wn. App. 111, 116, 872 P.2d 53 (1994) (quoting *Jackson*, 102 Wn.2d at 437). "Underlying the *Aguilar/Spinelli* test is the basic belief that the determination of probable cause to issue a warrant must be made by a magistrate, not law enforcement officers who seek warrants." *Jackson*, 102 Wn.2d at 436-37. To ensure a magistrate is not merely a "rubber stamp," the affidavit must "inform[s] him of the underlying circumstances which lead the officer to conclude that the informant was credible and obtained the information in a reliable way." *Id.* at 437.

While the *Aguilar/Spinelli* test was first articulated by the United States Supreme Court, that Court abandoned the test in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983), in favor of a "totality of the circumstances" approach. "The principal difference between the *Gates* approach and the *Aguilar-Spinelli* rule is that 'veracity' and 'basis of knowledge', while still relevant, are no longer both essential. Under *Gates*, a 'deficiency' on either of these 'prongs' may 'be compensated for' by a 'strong showing' on the other prong." *Jackson*, 102 Wn.2d at 435-36 (quoting *Gates*,

8

103 S. Ct. at 2329). "The 'totality of the circumstances' analysis downgrades the veracity and basis of knowledge elements and makes them only 'relevant considerations.'" *Id.* at 436 (quoting *Gates*, 103 S. Ct. at 2329).

In *Jackson*, the Washington Supreme Court criticized what it characterized as *Gates*'s "nebulous standard" for determining the existence of probable cause. *Id.* at 435. As the *Jackson* court explained, "[t]he two prongs of the *Aguilar-Spinelli* test have an independent status; they are analytically severable and each insures the validity of the information." *Jackson*, 102 Wn.2d at 437. Refusing to "follow, blindly, the lead of the United States Supreme Court," the Washington Supreme Court affirmed the *Aguilar/Spinelli* test as the continuing basis on which a warrant would be tested under article I, section 7 of the Washington Constitution. *Id.* at 438-39.

Both Mr. Lemmon and the State agree that the *Aguilar/Spinelli* test is the appropriate test for evaluating the warrant affidavit. According to Mr. Lemmon, however, the trial court mistakenly applied the federal standard. He bases his argument on the trial court's reference in its third conclusion of law to having looked "at the totality of the information set forth in the affidavit." Br. of Appellant at 8 (citing CP at 24).

We agree with the State that in focusing on the word "totality," Mr. Lemmon ignores the fair import of the conclusions as a whole. Read in its entirety, the court's third conclusion states, "In determining the reliability of the confidential informant, the Court looks at the totality of the information set forth in the affidavit." CP at 24. The

conclusion is consistent with the well-established principle that the issuing judge need not look at each fact set forth in the affidavit in isolation, but is to consider "all the facts and circumstances sworn to by the person seeking the warrant." *State v. Riley*, 34 Wn. App. 529, 531, 663 P.2d 145 (1983).

This is consistent with the court's oral ruling, which also referred to "the totality of the information" in the affidavit, stating:

> In determining whether or not there is a probable cause for a search warrant, I'm looking at whether or not the elements of *Aguilar-Spinelli* have been met. The Court looks at the four corners of the warrant. The Court can have some due deference to the issuing magistrate, and the Court looks at the totality of the information as well as looking at just what is established for the basis and reliability-basic knowledge and reliability of the informant.

RP at 15.

The court's conclusions 4, 5, and 6 stated that the reliability of the informant was satisfied by the evidence of a controlled buy, the fact that the reduction of charges sought by the informant was not likely to occur if he or she provided false information, and the informant's track record. Nowhere in the court's oral ruling or written findings and conclusions did the court refer to *Gates* or use the term "totality of the circumstances."

No fair reading of the court's findings, conclusions, and earlier oral ruling supports Mr. Lemmon's argument that the trial court applied the wrong standard in ruling on his motion to suppress.

10

*II. The requirements of* Aguilar/Spinelli *were satisfied*

We turn to whether the requirements of *Aguilar/Spinelli* were satisfied. Mr. Lemmon argues that they were not, and challenges the trial court's fourth and sixth conclusions of law: that the reliability of the informant was satisfied by the evidence of a controlled buy and by evidence of his or her track record.

Whether probable cause is established is a legal conclusion that we review de novo. *State v. Chamberlin*, 161 Wn.2d 30, 40, 162 P.3d 389 (2007); *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658, 661 (2008). We accord great deference to the magistrate's determination of probable cause, and will only disturb its decision to issue a warrant where there is an abuse of discretion. *Vickers*, 148 Wn.2d at 108; *State v. Cord*, 103 Wn.2d 361, 366, 693 P.2d 81 (1985). The affidavit "should not be viewed in a hypertechnical manner." *Riley*, 34 Wn. App. at 531. "[A] magistrate is entitled to draw reasonable inferences from the facts and circumstances set forth in the supporting affidavit," with the result that "[r]easonableness is the key and common sense must be the ultimate yardstick." *Id.* "Doubts concerning the existence of probable cause are generally resolved in favor of issuing the search warrant." *Vickers*, 148 Wn.2d at 108-09.

Mr. Lemmon has not assigned error to the trial court's finding at the conclusion of the *Franks* hearing that Detective Valley did not deliberately or recklessly misstate or

11

omit facts.[3] Our review is therefore limited, as was the trial court's, to the four corners of the warrant affidavit. *Neth*, 165 Wn.2d at 182.

As a threshold matter, Mr. Lemmon (citing *State v. Ibarra*, 61 Wn. App. 695, 699, 812 P.2d 114 (1991) and *State v. Rodriguez*, 53 Wn. App. 571, 575-77, 769 P.2d 309 (1989)), contends that a heightened showing of reliability is required where, as here, the identity of the informant is unknown to the issuing judge. Both decisions state that when information is provided by an identified citizen informant, the State's burden of demonstrating reliability is relaxed. *Ibarra*, 61 Wn. App. at 699 ("[T]he State's burden of demonstrating the identified citizen's credibility is generally relaxed."); *Rodriguez*, 53 Wn. App. at 574 ("When police receive information from an uninvolved witness or victim of a crime, the necessary showing of credibility is relaxed."). Where the informant is an ordinary citizen rather than a criminal or professional informant and his or her identity is revealed to the magistrate, the informant's "detailed description of the

---

[3] Mr. Lemmon devotes a concluding portion of his opening brief to an argument, in part, that "references in the search warrant affidavit to the controlled buy should have been excised," contending that, at the *Franks* hearing, he had "established the presence of other residences near his residence that were accessible to the informant." Br. of Appellant at 13, 15. Yet he has not assigned error to the trial court's finding at the conclusion of the Franks hearing that he failed to demonstrate a reckless misrepresentation or omission, RP at 109, nor does he cite authority or provide argument that the evidence was insufficient to support that finding. *Cf. Taylor*, 74 Wn. App. at 117-18 (under a *Franks* analysis, the court first determines whether a misrepresentation or omission was deliberate or reckless; if that showing is not made "it is unnecessary to determine whether [the misrepresentation or omission] was material"). We will not consider the argument further. *See* RAP 10.3(a)(6), 10.3(g).

underlying circumstances of the crime observed" may provide intrinsic indicia of the informant's reliability sufficient to satisfy both *Aguilar/Spinelli* prongs. *State v. Northness*, 20 Wn. App. 551, 557, 582 P.2d 546 (1978).

The State does not contend that the informant in this case was a citizen informant nor does it contend that the informant's description of what he or she observed suffices to satisfy both *Aguilar/Spinelli* prongs. It relies instead on four types of evidence that are recognized by Washington cases as either supporting an informant's reliability or, in the case of the fourth type of evidence, substituting for the veracity prong: (1) the controlled character of a buy at the premises to be searched, (2) the informant's track record, (3) the fact that the informant participated in the controlled buy in hopes of receiving favorable treatment, and (4) law enforcement's corroboration giving substance and verity to the informant's report of criminal activity.

### A. Controlled buy

A controlled buy, if properly executed, is one way to "provide the facts and circumstances necessary to satisfy *both* prongs of the [*Aguilar/Spinelli*] test for probable cause." *State v. Casto*, 39 Wn. App. 229, 234, 692 P.2d 890 (1984). "If the informant 'goes in empty and comes out full,' his assertion that drugs were available is proven, and his reliability confirmed." *Id.*

The State concedes on appeal that the controlled buy in this case "was imperfect because detectives 'couldn't keep a constant visual on the PO all the way down to

13

Lemmon's residence.'" Br. of Resp't at 8 (quoting warrant affidavit). While a "properly executed" controlled buy, without more, satisfies both *Aguilar/Spinelli* prongs, the fact that a buy is flawed in execution does not render it irrelevant to reliability.

A properly executed controlled buy requires some level of police surveillance, but does not require that officers see the actual exchange of marked bills for drugs. In *State v. Lane*, 56 Wn. App. 286, 289, 786 P.2d 277 (1989), for example, this court concluded that a controlled buy was properly executed where officers watched as an informant entered the main entrance of an apartment building "empty" and came out "full." *Id.* at 289. The informant told officers that he had gone to a second floor apartment to purchase the drugs and that a person in that apartment walked downstairs, to a first floor apartment, to obtain the drugs. A search warrant was issued for both apartments. Although the officers had not been able to see which apartment the informant entered, this court still found that the police surveillance, while not constant, "reduc[ed] the possibility that the informant obtained the cocaine from a source other than from within the apartment." *Id.* at 294. "[T]he search and surveillance conducted in a controlled buy remove much of the informant's opportunity to fabricate." *Casto*, 39 Wn. App. at 235.

*Lane* is distinguishable in that police could at least see the informant enter the apartment building, while the informant here was never seen entering any structure. But the State does not argue on appeal that its imperfect controlled buy satisfied both prongs of the *Aguilar/Spinelli* test; it argues only that it was relevant evidence. We agree. The

14

many aspects of the buy that *were* controlled reduced the possibility that the informant obtained the methamphetamine from a source other than Mr. Lemmon's motor home. It was relevant evidence of reliability, even if not dispositive evidence.

### B. Past history

The warrant affidavit stated that "[t]he PO has provided SOG with information about narcotic activity, illegal firearms and felony warrants in the past that have led to several arrests and felony charges in Mason County Superior Court. " CP at 58. Showing that an informant has a "proven 'track record' of reliability" is the most common way in which a hearsay informant's credibility is established. *State v. Lair*, 95 Wn.2d 706, 710, 630 P.2d 427 (1981).

Mr. Lemmon argues that the detective's attestation to the informant's past history was insufficient because it was not specific as to when the informant had provided information, the circumstances under which information had been provided, how many arrests and felony charges had resulted from the past information, or whether the information resulted in any convictions. Br. of Appellant at 11. He cites *State v. Fisher*, 96 Wn.2d 962, 639 P.2d 743 (1982) and *State v. Taylor*, 74 Wn. App. 111, 872 P.2d 53 (1994).

*Fisher* provides no support for Mr. Lemmon's argument. The warrant affidavit in that case stated, as to past history, that the informant providing the information "is reliable in that he or she has given information regarding drug trafficking [sic] and use in

15

the past which has proven to be true and correct." *Fisher*, 96 Wn.2d at 964. In analyzing the sufficiency of the affidavit to establish reliability, the court examined where, on a spectrum of specificity, the warrant applicant's description of the informant's history fell. It observed that "[t]he mere statement that an informant is credible is not sufficient . . . whereas it is almost universally held to be sufficient if information has been given which has led to arrests and convictions." *Id.* at 965 (citing 1 W. LAFAVE, SEARCH AND SEIZURE § 3.3, at 509 (1978)). The court characterized the statement in the affidavit before it as "l[ying] somewhere between these two positions." *Id.* It concluded that the affiant's statement was sufficient, explaining:

> While this is more than drawing the conclusion that the informant is credible and admittedly less than stating the facts as to why the past information has proven to be "true and correct", it still is a factual statement–not a conclusion of the affiant. We hold in this case that it is enough to enable a neutral magistrate to determine if the informant is credible.

*Id.* Detective Valley's statement, like the affiant's statement in *Fisher*, "inform[ed] the magistrate why the affiant believed the information to be reliable. It states a fact and is more than a bare assertion or conclusion." *Id.* at 966.

The second case relied upon by Mr. Lemmon, *Taylor*, is clearly distinguishable. The *Taylor* court *did* discuss the fact that the informant in that case had a two and one-half year track record, but in a different context. The court was not addressing a minimum duration of reliable cooperation required to make an informant's past history

16

relevant. Instead, faced with an argument that material misrepresentations and omissions in a warrant affidavit vitiated the validity of the warrant, the court held that even if the applicant for the warrant had materially misrepresented or omitted facts, the especially strong evidence of the informant's demonstrated reliability over the prior two and one-half years "was sufficient in itself to establish his reliability." *Taylor*, 74 Wn. App. at 121.

Mr. Lemmon cites no Washington case requiring that factual statements in a warrant affidavit about an informant's track record include details as to time, circumstances, number of incidents of cooperation, and conviction outcomes. Notably, the evidence of past history provided in *Taylor*, like the evidence here, was of information leading to arrests, not convictions. And unlike evidence of observed criminal activity in an application for a warrant, which must be sufficiently current (*see, e.g., State v. Lyons*, 174 Wn.2d 354, 360-61, 275 P.3d 314 (2012) (addressing possibly stale information on a marijuana grow operation)), we see no reason why evidence of an informant's demonstrated reliability must be evidence of the informant's recent cooperation. Recency, like detail, might go to the weight of the track record evidence, but not its relevance.

The State does not contend in this case that Detective Valley's statement of the informant's past history was sufficient in itself to establish reliability; it contends only that the evidence of past history was factual and relevant. It was.

17

### C. Participation in hopes of receiving favorable treatment

The warrant affidavit stated that "[t]he PO's ongoing cooperation is motivated by receiving a favorable recommendation from SOG, on pending charges in Mason County, in exchange for reliable information that leads to the seizure of controlled substances, related evidence and successful prosecution of the same." CP at 58-59. "[T]hat an informant may be trying to win favorable treatment in his own case will usually strengthen the motivation to tell the truth, because the informant knows his own fate will be affected by the ability of law enforcement officials to rely on his information." *Casto*, 39 Wn. App. at 235 n.2.

The affidavit included a related representation that the informant had made "numerous statements against his/her penal interest, admitting to having been involved in the possession, possession with intent to deliver and delivery of methamphetamine." CP at 59. Because "one who admits criminal activity to a police officer faces possible prosecution," statements against penal interest generally support an inference of reliability. *Lair*, 95 Wn.2d at 711.

### D. Description of matters observed during the buy

The warrant affidavit stated that a detective and animal control officer had independently corroborated matters the informant described observing during the controlled buy. As earlier detailed, the informant told detectives that he or she had seen women smoking heroin in the motor home and described the layout of Mr. Lemmon's

property and the vehicles and a dog the informant had seen outside. On August 8, shortly after the buy, a police detective and animal control officer drove to Mr. Lemmon's property and "verified the [informant's] information." CP at 58. The reasonable implication of the affidavit is that the detective and animal control officer verified the informant's description of what he or she observed *outside* the motor home.

If a warrant affidavit includes information from an informant that fails the 2-prong test of *Aguilar/Spinelli*, then police investigation corroborating the informant's report of criminal activity may replace the requirements of *Aguilar/Spinelli*. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994). Corroboration of an informant's report is significant to the extent that it gives substance and verity to the report that the suspect is engaged in criminal activity. *Jackson*, 102 Wn.2d at 438. But it is significant to *only* that extent: "[C]orroboration of public or innocuous facts only shows that the informer has some familiarity with the suspect's affairs," and merely supports an inference "that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring." *Id.*

Mr. Lemmon characterizes the matters that the informant described following the controlled buy as innocuous facts. It is fair to say that the facts the detective and animal control officer were able to corroborate *were* innocuous; there is no suggestion in the warrant affidavit that the detective and animal control officer corroborated the informant's report of women smoking heroin. The officers' corroboration of the

19

informant's description of Mr. Lemmon's property did not give substance or verity to the informant's report that Mr. Lemmon had sold him or her methamphetamine.[4]

### E. Cumulative support

"A single fact in an affidavit, when viewed in isolation, may not constitute probable cause but, when read together with other facts stated in the document, the affidavit [may] satisf[y] the requirement for evidence necessary to establish probable cause." *Vickers*, 148 Wn.2d at 110. The facts set forth in Detective Valley's affidavit, taken as a whole, were sufficient to allow an independent assessment of the informant's reliability. The trial court properly deferred to the magistrate's discretion in denying the motion to suppress.

### STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Lemmon raises two.

The first ground is that the trial court would not permit further motions, preventing Mr. Lemmon from raising the fact that the parcel number identified on the warrant

---

[4] While the corroboration of the informant's description of Mr. Lemmon's property did not provide support for the reliability of the informant's report that he or she purchased drugs from Mr. Lemmon, it was arguably relevant to the parties' dispute over how much to discount evidence of the controlled buy due to the incomplete surveillance. The fact that the informant reliably described "innocuous facts" about transitory matters, such as the presence of cars and the dog, was some evidence that he or she was on Mr. Lemmon's property rather than somewhere else during the times he or she could not be seen by surveilling officers.

20

affidavit does not exist. The second—related to the first—is that when he submitted a motion to this court asking that we take judicial notice of the parcel identification discrepancy, we placed the notice in his file without action.

Mr. Lemmon filed a motion for judicial notice with our court on June 20, 2013, asserting that the warrant affidavit described the property to be searched as "Parcel # 2216-20-93013" and asking that we take judicial notice that no such parcel exists. Motion to Take Judicial Notice of Public Records (June 20, 2013). The clerk of court responded that there was no provision for him to file the document and placed the motion in the file without further action. *See* Letter from David C. Ponzoha, Clerk, Wash. State Court of Appeals, Div. II, to Warren Lemmon (June 21, 2013).

Mr. Lemmon's statement of his first additional ground for relief provides no particulars as to when or how the trial court prevented him from raising the alleged discrepancy, nor does he explain why the alleged discrepancy matters. We will not consider a SAG "if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). In addition, "Only documents *that* are contained in the record on review should be . . . referred to in the statement." *Id.*

His second ground, complaining that we refused to take judicial notice of the alleged discrepancy and consider it in connection with his appeal, is similarly deficient. Although ER 201 states that certain facts may be judicially noticed at any stage of a proceeding, RAP 9.11 restricts appellate consideration of additional evidence on review.

21

Mr. Lemmon offers no justification under the RAP 9.11 criteria for his belated argument that the warrant affidavit mistakenly described the property to be searched.

Moreover, because Mr. Lemmon had court appointed counsel, the clerk properly refused to take action on the motion. *State v. Romero*, 95 Wn. App. 323, 325-26, 975 P.2d 564 (1999) (defendants represented by appellate counsel may not personally "file pleadings with and/or request legal advice from clerk of Court of Appeals as it relates to their appeals.").

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

22